IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HUDSON SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-11604-GAO |
| | ) | |
| GEORGE C. AUSTIN, III, AS | ) | |
| EXECUTOR OF THE ESTATE OF GEORGE | ) | |
| CLIFFORD AUSTIN, JR., A/K/A | ) | |
| G. CLIFFORD AUSTIN, II, GEORGE | ) | |
| C. AUSTIN, III, AS HEIR OF | ) | |
| GEORGE CLIFFORD AUSTIN, JR., | ) | |
| A/K/A G. CLIFFORD AUSTIN, II, | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| and MASSACHUSETTS DEPARTMENT | ) | |
| OF REVENUE, | ) | |
| | ) | |
| Defendants. | ) | |

### UNITED STATES' OPPOSITION TO THE COMMONWEALTH OF MASSACHUSETTS' MOTION TO DISMISS ENTIRE PROCEEDING

**QUESTION PRESENTED**

The United States and the Commonwealth of Massachusetts have each waived their sovereign immunity to suits in interpleader in state courts, with the federal waiver expressly conditioned upon the right to remove such an action to federal court. The Eleventh Amendment to the Constitution of the United States protects the states only from actions against them *in personam* which are instituted by private persons in the federal courts. Does removal by the United States of an action *in rem* (or *quasi in rem*) to determine competing interests in a fund of money trigger an Eleventh Amendment right of the Commonwealth to be dismissed from the

1

action, and, if so, must the action also be dismissed?

## DISCUSSION

### I. SUBJECT-MATTER AND ARTICLE THREE JURISDICTION

With the exception of the Eleventh Amendment issue, there is no challenge to the propriety, including the timeliness, of the removal. When the United States removes an action under a removal statute provided expressly for the benefit of the United States (such as 28 U.S.C. § 1442 or 1444), jurisdiction of the action is not predicated upon either a federal question or diversity of citizenship. Rather, when the United States exercises its unique removal authority, the statutory basis for subject-matter jurisdiction are the removal statutes themselves. Sections 1442 and 1444 provide this Court with jurisdiction over this proceeding. See, e.g., Hood v. United States, 256 F.2d 522, 525-26 (9th Cir. 1958) ("the United States [has] the right to remove certain cases at its sole option without regard to the amount in controversy . . . The trial court asserted jurisdiction. We hold this conclusion correct, since the removal statute seems plain"). See also E.C. Robinson Lumber Co. v. Hughes, 355 F.Supp. 1363, 1367-68 (E.D. Mo. 1972) (the district court, following a lengthy analysis of decisions construing Sections 2410 and 1444, denied the plaintiff's motion to remand). In reaching its conclusion, the Robinson court relied on the explanation in Moore's Federal Practice of the Ninth Circuit's decision in Hood, quoting the following text:

> The Ninth Circuit view is clearly correct . . . [T]here is no question that Congress has the constitutional power under Article III to confer removal jurisdiction upon the state courts of any suit against the United States . . .
>
> The right to remove under § 1444, unlike removal under § 1441, is not in any way keyed to original jurisdiction . . . 1A J. Moore,

Federal Practice, ¶ 0.166 at 894-96.[1]

The court concluded that: "Title 28 U.S.C. § 1444 expressly grants the United States the substantive right of removal and *confers subject matter jurisdiction over such a proceeding in federal court.*" E.C. Robinson Lumber, 355 F.Supp. at 1368 (emphasis added). See also City of Miami Beach v. Smith, 551 F.2d 1370, 1374 n.5 (5th Cir. 1977) ("§ 1444 confers a substantive right to remove, independent of any other jurisdictional limitations"). Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§ 1442 and 1444.[2]

## II. THE RIGHT TO REMOVE IS A CONDITION OF THE UNITED STATES' WAIVER OF SOVEREIGN IMMUNITY

Absent a waiver of the immunity of the United States to the interpleader action, it could not have been joined as a defendant in the state court, nor would the present controversy be before this Court.[3] It is elemental that "[s]overeign immunity is jurisdictional in nature . . . [and] the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (*quoting* United States v. Sherwood, 312 U.S. 584, 586 (1941)).

---

[1] The quoted material may now be found at 16 Moore's Federal Practice § 107, App. 109, pp. 149-52 (3rd ed. 1997).

[2] The same analysis supports the conclusion that jurisdiction is conferred under 28 U.S.C. § 1442. See Williams v. Brooks, 945 F.2d 1322 (5th Cir. 1991), where the Court of Appeals, acting *sua sponte*, found that the removal authority in § 1442(a)(1) was itself the source of jurisdiction in the district court to which a member of the House of Representatives had removed a defamation action brought against him in state court. See Williams, 945 F.2d at 1324-25 n.2.

[3] There is a provision, peculiar to the federal tax enforcement statutes, that would have permitted the United States, had it not been joined (or been improperly joined), to have intervened in the state court action in order to assert its tax liens and then remove the case to this court pursuant to 28 U.S.C. § 1444. See 26 U.S.C. § 7424. Section 7424 is not applicable under the circumstances of this case.

3

In this case, the United States was made a defendant in the state court interpleader proceeding pursuant to 28 U.S.C. § 2410. That statute waives sovereign immunity where "the United States claims a mortgage or other lien" on the interpled property. The waiver is expressly conditioned on the right of the United States to remove the action to the United States district court. See Hood, 256 F.2d at 526 ("[t]he right to remove cannot be denied"); Hamlin v. Hamlin, 237 F.Supp. 299, 300 (ND Miss. 1964) ("[t]he plain language of the two quoted statutes [28 U.S.C. § § 1444 and 2410] makes it clear that the United States has an absolute right to remove   . . ."). See also E.C. Robinson Lumber Co., 355 F.Supp. at 1368 (collecting decisions from a number of courts: "[s]everal courts have recognized and expressly stated that 28 U.S.C. § 1444 gives the United States the unqualified option to remove an action originally brought in state court under § 2410"). Thus, in construing the waiver of sovereign immunity in Section 2410 "strictly in favor of the government," as our jurisprudence teaches, see, e.g., United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994), and cases cited therein, the right of the United States to remove the action to this Court must be deemed absolute, and the claim which joins the United States as a party may neither be remanded nor dismissed over its objection just because another party has a preference for the state forum.

### III. REMOVAL OF AN INTERPLEADER BY THE UNITED STATES DOES NOT IMPLICATE THE ELEVENTH AMENDMENT

As written, ratified, and applied, the Eleventh Amendment is a restriction only upon private parties attempting to invoke the judicial power of the United States against any of the

several states.[4] That restriction was recently clarified by the Supreme Court, and we now understand that the bar of the Eleventh Amendment is applicable only to *in personam* actions against the states. Thus, where, as here, the court is concerned with adjudication of interests in property which is *in custodia legis*, the Eleventh Amendment can not provide the rationale for dismissal of a state-claimant from the action. Additionally, nothing in the Eleventh Amendment purports to limit the power of the United States of America to bring states into federal courts.

    A.    *The Removal of an In Rem Interpleader Action Is Beyond the Scope of Eleventh Amendment Protection*

Last year, the Supreme Court in Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004) (hereinafter "TSAC"), held that a bankruptcy court's exercise of its *in rem* jurisdiction to discharge a state-held student loan did not infringe state sovereignty under the Eleventh Amendment. The Court, citing California v. Deep Sea Research, Inc., 523 U.S. 491 (1998), noted that, like certain *in rem* admiralty actions in which the State does not possess the *res*, "[t]he discharge of a debt by a bankruptcy court is similarly an *in rem* proceeding," to which the Eleventh Amendment is not applicable. TSAC, 541 U.S. at 447.

In support of its conclusion, the Court observed that upon the filing of a petition in bankruptcy, the bankruptcy court assumes exclusive jurisdiction over the debtor's property. In a

---

[4] The Eleventh Amendment to the Constitution of the United States of America provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the citizens of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment has been interpreted to preclude suits against a state in a federal court by citizens of the defendant state (unless the state has waived its immunity to suit in a federal forum). See, e.g., Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990), and cases cited there.

1467461.3

typical Chapter 7 proceeding, the bankruptcy court notifies the creditors of the proceeding, and any debtor desiring to participate will file a proof of claim. Whether or not a creditor files a proof of claim, once a discharge is issued the creditor will be unable to collect any unsecured debts. As the Court explained, "[t]he discharge order releases the debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt." TSAC, 541 U.S. at 447. The bankruptcy court's discharge order has this effect, the Supreme Court said, "because the court's jurisdiction is premised on the debtor and his estate and not on the creditors." TSAC, 541 U.S. at 447. The nature of the proceeding and the relief requested in the instant interpleader action is so closely analogous to the bankruptcy discharge proceeding described in TSAC that the same result should be reached here.

The instant interpleader action is an ordinary or "straight" interpleader in which a disinterested plaintiff-stakeholder who seeks nothing more than to rid itself of the burden of possessing certain real or personal property in which it, for itself, claims no interest by placing the property in the actual, or constructive, possession of a court and allowing lienholders and other claimants to make their claims to the property. The relief sought by the plaintiff is to have "the claimants compete in an effort to have [the interpled property] awarded." General Atomic Co. v. Duke Power Co., 553 F.2d 53, 57 (10th Cir. 1977). Once the Court has determined the claims of the creditors or claimants to the fund, the plaintiff-stakeholder will be relieved of any further liability to them *on account of that fund*, just as, in a bankruptcy discharge proceeding, a debtor upon discharge is relieved of any further liability to its creditors with respect to those

debts that have been discharged.[5]

The purpose of the ordinary interpleader action is merely to "administer a limited amount of property and [resolve] conflicting claims of several litigants to that property." General Atomic Co., 553 F.2d at 57. Many federal and state courts, cognizant of this purpose, have recognized the *in rem* or *quasi in rem* nature of such interpleader actions. The Tenth Circuit views an interpleader action as "an in rem or quasi in rem suit in its nature, [where t]he court holds the property and the claimants compete in an effort to have it rewarded." General Atomic Co., 553 F.2d at 57. The Eastern District of Arkansas has recognized that an interpleader suit has some of the attributes of an *in rem* proceeding. See Equifax, Inc. v. Luster, 463 F.Supp. 352 (E.D. Ark. 1978). States holding that interpleaders are *in rem* or *quasi in rem* proceedings include: Alabama (service by publication permitted for interpleaders under Alabama Rule of Civil Procedure 4.3); Connecticut (Triangulum Assoc. v. Harrison Conference Center, 1991 WL 135318 (Conn. Sup. Ct. 1991); Mississippi (Irvine v. Irvine, 241 Miss. 816, 133 So.2d 14 (1961)); New Jersey (Union Trust & Hudson County Nat'l Bank v. Kyle, 96 N.J. Eq. 125, 124 A. 44 (Chancery, N.J. 1924) (bank interpleader of satchel containing silver which had been stored with bank was *in rem* proceeding); Texas (Bryant v. United Shortline, Inc. Assurance Services, N.A., 984 S.W.2d 292 (Tex. Civ. App. 1999) (where the court has possession of the funds, it has jurisdiction to determine who is entitled to it - the action is *quasi in rem*).[6]

---

[5] Perhaps it may be argued that Hudson Savings Bank seeks affirmative relief from the Commonwealth in that it desires an order that would effectively enjoin the Commonwealth from asserting further claims against it with respect to the fund. But that is no different from the relief that the debtor in TSAC sought. We doubt that, in the wake of TSAC, the Supreme Court would characterize a "straight" interpleader, such as this one, as an *in personam* action.

[6] Some states, such as New York, have not answered the question definitively. Compare Cerrone v. Trans World Airlines, 148 N.Y.S.2d 162 (Sup.Ct. N.Y. Cty. 1955) (action to determine ownership of stock certificates

While many courts have acknowledged the *in rem* or *quasi in rem* nature of the ordinary interpleader, some courts have misread New York Life Ins. v. Dunlevy, 241 U.S. 518, 521 (1916), to stand for the proposition that *all* interpleader actions, even "straight" interpleaders, are *in personam* actions. In Dunlevy, the Supreme Court said that a state-court action, denominated as an "interpleader," "was an attempt to bring about a final and conclusive adjudication of [a claimant's] personal rights." Dunlevy, 241 U.S. at 521. Dunlevy, however, did not involve a "straight" interpleader. Rather, the facts of the case suggest that it was an attempt to obtain a personal judgment against an absent claimant. This significant distinction between the "interpleader" in Dunlevy and ordinary interpleader was addressed by Judge Weinfeld in Bache Halsey Stuart Shields, Inc. v. Garmaise, 519 F.Supp. 682 (S.D. N.Y. 1981), where the district court rejected a challenge to a stakeholder's reliance on 28 U.S.C. § 1655, a statute that has been characterized as an "*in rem* service statute," to effect service in an interpleader action.[7]

> The old case of New York Life Ins. Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916), is not an obstacle to this interpleader action. Although that case has been cited for the proposition that interpleader actions are in personam, the facts of that case, which was a state interpleader action involving state procedure, suggest that a personal judgment was being rendered against the absent claimant; the Supreme Court noted that the action was "not merely to discovery property and apply it to debts." Id. at 521 (citing Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877)). On the contrary, the present action concerns a dispute as to a discrete res, the assets held by Bache, as to which the

---

physically present in forum state is *quasi in rem*) with Hanna v. Stedman, 230 N.Y. 326, 130 N.E. 566 (1921) (an attempt by an insurer to satisfy a personal liability to claimants was *in personam*).

[7] Like the District Court for the Southern District of New York, the Fifth Circuit has held that service may be made upon claimants in an interpleader action pursuant to 28 U.S.C. § 1655. See United States v. Estate of Swan, 441 F.2d 1082, 1086 (5th Cir. 1971). See also 7 Wright, Miller & Kane, Federal Practice & Procedure, § 1711 at 605-11 (3rd ed. 2001) for an extended discussion of the nature of federal statutory interpleader under 28 U.S.C. § 1335.

1467461.3

defendants assert claims.

Bache Halsey, 519 F.Supp. at 687 n.12.

Judge Weinfeld got it right, properly distinguishing the relief requested in Dunlevy from that requested in an ordinary interpleader, such as the matter now before this Court, where the plaintiff-stakeholder is little more than a bailee of the property subject to the claims of creditors and owners. In such a "straight" interpleader the relief sought by the plaintiff is to have "the claimants compete in an effort to have [the interpled fund] awarded." General Atomic, 553 F.2d at 57. The plaintiff's discharge of its duties vis-à-vis the *res* is incidental to the court's disposition of the property and a corollary to the necessity of the distributing court to protect its own jurisdiction. What the cases teach us is that distribution, rather than discharge, is the essence of interpleader. So, while a complaint seeking interpleader relief may look to some like it seeks *in personam* relief, the discharge which is both sought and given, at least as to the parties who have been served and appeared in the action, is plainly *in rem*, as the purpose of the action is "merely to apply [the interpled property] to its debts." Compare Dunlevy, 241 U.S. at 521. Inasmuch as the Commonwealth has been served and is here, an adjudication of its claims to the fund can be made by this court in this proceeding as an *in rem* determination without implicating any right guaranteed by the Eleventh Amendment.[8]

---

[8] The recent decision of the First Circuit in Metropolitan Property and Cas. Ins. Co. v. Shan Trac., Inc., 324 F.3d 20, 25 (1st Cir. 2003) does not preclude this analysis. Shan Trac involved the resolution of claims following a motor vehicle crash that left eight dead and five injured. Although the accident occurred in Nevada, the action was brought in the district court in Massachusetts, the insurer's place of business, with jurisdiction predicated on the federal interpleader statute, 28 U.S.C. § 1335, because there was sufficient diversity among the defendants and the amount of the fund exceeded the statutory minimum. The issue presented there was whether, by depositing a fund equal to the limits of its liability policy with the court, the plaintiff-insurer could escape further liability not only to those persons named and served in the action (who had settled with the insurer), but also to non-parties. The insurer sought, and obtained from the district court, a judgment which would preclude such non-parties forever from "mak[ing] claim against Metropolitan under Part 5 of [the policy]." Shan-Trac, 324 F.3d at 25. The Court of

9	1467461.3

As previously noted, once this Court has determined the claims of creditors or claimants to the fund, the plaintiff-stakeholder will be relieved of any further liability to them *solely on account of that fund*, just as, in a bankruptcy discharge proceeding, a debtor upon discharge is relieved of any further liability to its creditors with respect to those debts that have been discharged. In light of TSAC, the instant interpleader action should be viewed by this Court as an *in rem* proceeding that is not barred by the Eleventh Amendment.[9]

B.  *In Any Event, the Invocation of Federal Judicial Power by the United States Is Beyond the Scope of Eleventh Amendment Protection*

There is nothing in the Eleventh Amendment which purports to limit the power of the United States of America, itself, conferred by statute and rooted in Article III of the Constitution, to bring the states into federal courts. See Parks v. United States, 784 F.2d 20, 23-24 (1st Cir. 1986) (Eleventh Amendment does not limit the right of the United States to implead agency of

---

Appeals, relying on Dunlevy, quite properly vacated that portion of the judgment. Of course non-parties could not be precluded from exercising all rights they may have had against the insurer, itself. Such an adjudication could have been made only upon the acquisition of *in personam* jurisdiction, and if such jurisdiction had been acquired, the persons to be precluded would no longer have been non-parties. That part of the Shan-Trac opinion does not, in any way, undermine the portion of the opinion which affirms the district court's adjudication with respect to the fund which was actually interpled. The *per capita* allocation of the district court's judgment was affirmed, with the Court of Appeals' implicitly acknowledging that, as to the fund, the proceeding was either *in rem* or *quasi in rem*: "[o]f course, under the policy Metropolitan's payment to the policy maximum to some claimants may well exhaust any obligations it has to others . . ." Shan Trac, 324 F.3d at 26.

Certainly, unlike Dunlevy and Shan Trac, the plaintiff here does not seek an adjudication against the Commonwealth as an *absent* defendant. The facts here are plainly distinguished from those facts which caused those courts to characterize those actions as *in personam*.

[9] Cory v. White, 457 U.S. 88 (1982) does not mandate a different result. In Cory, the Supreme Court held that the Eleventh Amendment "bar[red] the statutory interpleader sought in this case." Cory, however, was not a case where a stakeholder paid funds into the court and sought only a determination of the defendants' right to the funds. Rather, it was a suit brought by the executor of the estate of Howard Hughes seeking a determination whether Texas or California had the right to impose inheritance taxes on the estate. Both of these states had claimed that Hughes was domiciled in their state when he died. The Supreme Court viewed the suit as one seeking injunctive relief against a state, *i.e.*, the executor sought an order that would enjoin the officials of one of the states from applying their own state's law. That issue goes well beyond the rights of parties to a surplus fund in a straightforward, post-foreclosure interpleader case such as this, and thus the Court's concerns in Cory v. White do not apply here. This case, as explained in the text, is more analogous to TSAC.

1467461.3

the Commonwealth of Massachusetts in privately-commenced action for money damages); Barrett v. United States, 853 F.2d 124, 126-30 (2d Cir. 1988) (same as to impleading the State of New York in action under the Federal Tort Claims Act). In Parks, the First Circuit rejected the claim of an Eleventh Amendment bar, observing that: "[i]t is well established that a defendant may, as a third- party plaintiff, implead a party that the plaintiff could not sue directly, the claim against the third-party defendant inuring to the benefit of the third-party plaintiff and not to the original plaintiff." Parks, 784 F.2d at 24. See also United States v. Texas, 143 U.S. 621, 643-46 (1892) (upholding the original jurisdiction of the Supreme Court, under Article III, over an action by the United States against a state); United States v. California, 328 F.2d 729, 732-34 (9th Cir. 1964) (reversing dismissal by the district court, and confirming that 28 U.S.C. § 1345 confers jurisdiction in the district courts of cases and controversies where the United States is a plaintiff including actions against states for which original jurisdiction is vested in the Supreme Court by Article III).

The Commonwealth now stands as a claimant in an interpleader action pending in the United States District Court for the District of Massachusetts. The Commonwealth is in this Court not because of the act of any private plaintiff, but because of the act of the most public of defendants, the United States of America. It was the United States, acting pursuant to its authority conferred by the Congress in the provisions found in 28 U.S.C. § § 1442 and 1444, that invoked the federal judicial power and removed the action. Removal here is analogous to the impleaders in Parks and Barrett, and is consistent with the right to join the Commonwealth as a defendant in an action originating in this Court.

The United States could have brought an action in this Court to foreclose the federal tax

lien on the surplus funds. There can be no dispute that in such a case, where the United States asks the district court to determine all claims of the parties to the fund, the court's jurisdiction and power are not limited by the Eleventh Amendment, and the claims of the Commonwealth would be properly determined. What the United States requests the district court to do by its removal of this action is not, in any way, different from that which it would seek as Plaintiff in the hypothetical foreclosure action described above. Accordingly, this Court may properly conclude that, by removing this action, the United States has invoked federal judicial power in the same manner and to the same extent as though it were a plaintiff. The jurisdiction and power of the district court to determine all claims of all parties, including the Commonwealth, to the fund in this action are not limited to any extent by the Eleventh Amendment.

## IV. IN THE ALTERNATIVE, THE COMMONWEALTH HAS WAIVED ITS IMMUNITY, AND THE ACTION MAY PROCEED BECAUSE OF DERIVATIVE JURISDICTION

The Commonwealth does not argue that it was not properly joined as a defendant in the above-titled action. The waiver of the Commonwealth's immunity to this lawsuit as originally commenced is beyond dispute. And, having waived its immunity to a suit that was subject to removal to the United States District Court by the United States (which was, itself, joined under the federal statute waiving its immunity on the condition that the suit be subject to removal) the Commonwealth is now precluded from attempting to withdraw its waiver. Cf. Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002) (state, which had explicitly waived immunity to action in state court, joined in a petition to remove the action to federal court could not rely on the Eleventh Amendment to later withdraw its immunity *for that action* in federal court). Further, it follows that an action properly brought against the Commonwealth in a

state court must, if otherwise properly removed, continue upon removal.

    A.    *The Commonwealth's Waiver of Immunity Must Be Interpreted to Contemplate Removal*

In moving to dismiss, the Commonwealth attempts to impose the condition that its general waiver of immunity does not extent to cases where the United States is named as a defendant and removes the case to federal court (although if the United States does not remove, the waiver continues in effect). We are aware of no such limitation expressly set forth in any statute waiving the Commonwealth's immunity. The Commonwealth's "consent to suit [must be] expressed by the terms of a statute, *or appear by necessary implication from them.*" Bain v. City of Springfield, 424 Mass. 758, 763, 678 N.E.2d 155, 159 (1997) (emphasis added), *citing* C&M Construction Co. v. Commonwealth, 396 Mass. 390, 392, 486 N.E.2d. 54 (1985) (finding that reasonable construction of state anti-discrimination statute would allow for award of punitive damages in face of sovereign immunity claim).[10]

A waiver of the Commonwealth's sovereign immunity will not be construed by the Courts of the Commonwealth in a manner to render it ineffective. See Bates v. Director of the Office of Political and Campaign Finance, 436 Mass. 144, 763 N.E.2d 6 (2002). In Bates, the Supreme Judicial Court found that voter-enactment of a clean elections law by the process of referendum providing for limited public funding for elections necessarily waived the Commonwealth's sovereign immunity to a lawsuit to obtain such funding. It held that although

---

[10] We are aware that the Supreme Court has fashioned a strict test for determining whether a state has waived its immunity to suit in federal court. See e.g., Horizon Bank & Trust v. Flaherty, 309 F.Supp.2d 178, 186-87 (D.Mass. 2004), and cases discussed there. However, the strict federal test cannot replace a state's own, more relaxed formulation of its own sovereign immunity. Where, as here, the Supreme Judicial Court has modified the generally-applicable federal concept of a state's waiver of its immunity, the federal court must apply the state standard to determine whether sovereign immunity has been waived.

1467461.3

the Commonwealth's sovereign immunity was not expressly waived in the text of the public-funding provision, an "abrogation" of such immunity was "inherent" in the statute so that "[t]he power to bind the Commonwealth to payments of public funds . . . is *required 'by necessary implication'* from the clean elections law." Bates, 436 Mass. at 173, 763 N.E.2d at 27 (emphasis added). The Court in Bates grounded its construction of the clean elections law on a principle of statutory construction found in the bedrock of Massachusetts jurisprudence – a statute shall not be construed to be "ineffective." Bates, 436 Mass. at 173-74 ("[w]e will not impute to the voters who enacted the clean elections law an 'intention to pass an ineffective statute'") (*quoting* Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 548, 39 N.E.2d 87, 105 (1942)). See also MacInnis v. Morrissey, 298 Mass. 505, 509, 11 N.E.2d 472, 475 (1937) )"[a]n intention to pass such an ineffective statute is not to be imputed to the Legislature"). That the United States may be made a party to such an action is easily foreseeable – a person who has not paid income or employment taxes to the Commonwealth is also very likely to have defaulted on obligations under the federal internal revenue laws.

The necessary implication of the Commonwealth's waiver is that if the United States is a defendant and has the right to remove, in the absence of an express statutory limitation on the Commonwealth's waiver, the action should proceed in federal court and the Commonwealth may not seek to extricate itself from a lawsuit to which its own legislature has consented. This construction of waivers of each governmental entity's immunity not only makes sense, it also accommodates and recognizes the practical necessity of deciding such matters in a single

lawsuit.[11]

      B.    *Under the Applicable Principle of Derivative Jurisdiction, Removal Does Not Void the Commonwealth's Waiver*

The construction for which we argue here is also consistent with the principle of derivative jurisdiction, which establishes the scope of the federal court's jurisdiction in a removed action. The principle of derivative jurisdiction has ordinarily been employed to limit the types of cases that the federal court can hear – if the state court did not have jurisdiction, the federal court acquired none on removal. See Minnesota v. United States, 305 U.S. 382, 389 (1939). The issue presented here is: If the state court did have jurisdiction, does the federal court lose it on removal?

Our very question was asked and was answered "no" by the Supreme Court in Arizona v. Maypenny, 451 U.S. 232 (1981). In Maypenny, an officer of the Border Patrol was indicted in an Arizona court on a charge of assault with a deadly weapon for having fired his shotgun at an escaping fugitive. The criminal case was removed to the district court under 28 U.S.C. § 1442 because the act occurred while the defendant was acting in his official capacity as a Border Patrol agent. After the jury returned a guilty verdict, the district court, acting on its own motion, vacated the jury verdict on the grounds of official immunity. Arizona sought to exercise its state-law right to appeal the acquittal on the grounds that the district court had exceeded its authority. The Ninth Circuit dismissed the appeal for lack of jurisdiction, holding that the prosecution could not appeal from an acquittal. The Supreme Court granted certiorari, asserting in its opinion that

---

[11] The Commonwealth has never asserted that its waiver of immunity is limited to actions in which the United States is not a party, or to those actions which the United States does not remove to federal court from the Commonwealth's courts. Any such judicial construction of the Commonwealth's waiver would render the waiver ineffective, an impermissible construction under the holdings of the Supreme Judicial Court.

"the sole question posed here is whether the respondent's removal of the state prosecution to federal court for trial alters the nature of the State's otherwise well-established right under state law." Maypenny, 451 U.S. at 240.

After examining the effect, policies, and principles underlying the removal under § 1442, the Court rejected the Court of Appeals' conclusion that "the fact of removal substantially alters the State's right to seek review." Maypenny, 451 U.S. at 241. The Court went on to hold that "the invocation of removal jurisdiction . . . does not revise or alter the underlying law to be applied." Maypenny, 451 U.S. at 242. Noting that jurisdiction on removal "is a purely derivative form of jurisdiction, neither enlarging *nor contracting* the rights of the parties," the Court held that Arizona's state-law created right to appeal was preserved upon removal.[12] Maypenny, 451 U.S. at 242 (emphasis added).

Here, where the superior court had jurisdiction in the first instance to adjudicate the claims of all parties, including those of the Commonwealth against the fund, removal by the United States under Sections 1442 and 1444 neither alters nor revises the state-law waiver of the Commonwealth's immunity. Thus, this Court, upon removal of the action by the United States,

---

[12] In a footnote to that discussion, the Court noted that the relevant question is whether, where state-court jurisdiction is found to exist, the federal court loses such jurisdiction as a result of removal. See Maypenny, 451 U.S. at n.17. The Supreme Court's unequivocal answer to that question in Maypenny is: "No." The amendment, in 1986, of 28 U.S.C. § 1441 to add Section 1441(e), providing that in diversity and federal question matters, the federal courts will have jurisdiction in removed actions even if the state court did not, does not undercut the principle of derivative jurisdiction. Rather, that subsection simply expands the jurisdiction of the federal courts by erasing the restrictive effect of derivative jurisdiction as pronounced by the decision in Minnesota v. United States, 305 U.S. 382 (1939). The continuing vitality of the principle of derivative jurisdiction was noted by the Supreme Court in a decision handed down following the enactment of Section 1441(e). In Int'l Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72 (1991), the Supreme Court quoted the footnote 17 language from Maypenny, on which we rely here, to suggest the possibility that derivative jurisdiction would allow a suit over which the state court had good jurisdiction to continue in federal court following a valid removal under Section 1442 even if the action could not originally have been commenced in the district court for want of standing under Article III. See Int'l Primate Protection League, 500 U.S. at 78 n.4.

has the same jurisdiction and power to resolve the claims of the parties to the fund, resulting in the incidental discharge of their claims against the plaintiff vis-à-vis the interpled fund.

V.   PRIOR DISTRICT COURT RULINGS

The Commonwealth cites to numerous decisions from the United States District Court for the District of Massachusetts for the proposition that the Eleventh Amendment bars federal court jurisdiction over the Commonwealth in removed interpleader actions. The United States posits that these cases are either distinguishable or wrongly decided.

First, most of the cases directly on point (which several of the cases cited by the Commonwealth are not), have not granted the relief sought by the Commonwealth, namely the dismissal of the entire action. Rather, those courts have determined that the adjudication of the remaining defendants' interests in the interpled fund in those cases can go forward without the Commonwealth's participation, though they agreed with the Commonwealth that its Eleventh Amendment immunity had not been waived. See First Massachusetts Bank v. Daoust, et al., 214 F.Supp.2d 79 (D.Mass. 2002); Fleet Nat'l Bank v. Kaplan, et al., 02-11175-RWZ (D.Mass. 2002); Marc Whitehouse v. Commonwealth, et al., 03-10358-PBS (D.Mass. 2003); GE Capital Mortgage Services, Inc. v. Estate v. Lugo, 319 F.Supp.2d 127 (D.Mass. 2004); and Horizon Bank & Trust v. Flaherty, 309 F.Supp.2d 178 (D.Mass.), *dismissed as moot*, 391 F.3d 98 (1st Cir. 2004).

Of the remaining cases,[13] only the three cases decided by this Court have allowed for the

---

[13] There are two additional cases cited to by the Commonwealth which have no appropriate application to this matter. In Plymouth Savings Bank v. Gonsalves, et al., 02-01952-MLW (D.Mass 2002), the Court granted the Commonwealth's unopposed motion to remand this proceeding. This motion was unopposed, however, because counsel for the Commonwealth had represented to counsel for the United States that she intended to withdraw the motion to remand and instead file a motion to dismiss. Counsel for the Commonwealth, however, did not notify the Court of the intention to withdraw the motion to remand until 1 day after the motion to remand was granted. Woods

1467461.3

dismissal of the entire proceeding under the theories espoused by the Commonwealth. GMAC v. Bayko, 04-12448-GAO (D.Mass. 2005), *dismissed as moot*, 05-1859 (1st Cir. 2005); First Federal Savings Bank v. Ward, et al, 03-10168-GAO (D.Mass. 2003); Cape Ann Savings, 02-10032-GAO (D. Mass. 2002). The United States has been unable to appeal any of these decisions because the underlying "case or controversy," namely the competing claims to the applicable fund, have been resolved, thereby mooting any possible appeal on the merits.

### VI. EVEN IF THE COMMONWEALTH WERE ENTITLED TO BE DISMISSED FROM THIS ACTION, IT IS ENTITLED TO NO ADDITIONAL RELIEF

If this Court should determine that the Eleventh Amendment requires the dismissal of the Commonwealth from this action, the Court should not grant the second part of the Commonwealth's motion by dismissing the entire action. Judges Keeton and Zobel determined (in Daoust and in Kaplan) that the district court can proceed to determine the interests in the interpled fund without the Commonwealth being present. Further, in Horizon Bank, Judge Young determined that the Commonwealth was not an indispensable party and denied the Commonwealth's motion to dismiss the entire case. Judge Young opined, and we agree (assuming *arguendo* that the Eleventh Amendment requires the dismissl of the Commonwealth), that the approach to be followed is "a pragmatic, case-specific examination of whether resolution of a case in the absence of a particular party comports with the Federal Rules' twin goals of fairness and efficiency." Horizon Bank, 309 F.2d at 191. Judge Young determined that the

---

v. Woods, 02-40112-NMG (D.Mass. 2002), was an action seeking a declaratory judgment, rather than an interpleader action, and the United States had already moved to dismiss that action on the grounds that the United States' sovereign immunity had not been waived for purposes of that proceeding. The Court granted the Commonwealth's unopposed motion to dismiss, effectively granting the United States' motion as well. The requisite adversity was lacking in Woods to warrant citing it as meaningful precedent.

1467461.3

Commonwealth was a necessary party, but went on to analyze the question of "indispensability" in light of the four "gestalt" factors under Rule 19(b) of the Federal Rules of Civil Procedure. Horizon Bank, 309 F.2d at 191-94. He determined that the district court could indeed "properly resolve claims as between the United States and the Commonwealth." Horizon Bank, 309 F.2d at 194. The Commonwealth's motion to dismiss the entire action was denied in Horizon Bank, with Judge Young observing that "[w]hatever evils proceeding to judgment or remanding might produce, dismissal of the entire case multiplies them several-fold." Horizon Bank, 309 F.2d at 195-96.

## CONCLUSION

The United States has demonstrated that its removal of this interpleader action does not implicate the Eleventh Amendment, and that there is no basis for dismissal of either the Commonwealth or the entire action. The Commonwealth's motion must be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


/s/ Lydia Bottome Turanchik
LYDIA BOTTOME TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6560
Lydia.D.Bottome@usdoj.gov

1467461.3

CERTIFICATE OF SERVICE

    It is hereby certified that the foregoing document was filed via the Court's electronic filing system on December 22, 2005. This system will automatically generate and send a Notice of Electronic Filing to the counsel of record in this matter. For those counsel not registered on the electronic filing system, it is hereby certified that a copy of this document was sent by First Class mail, this 22nd day of December, 2005.

                                                /s/ Lydia Bottome Turanchik
                                                LYDIA BOTTOME TURANCHIK
                                                Trial Attorney, Tax Division

1467461.3