# United States Court of Appeals
## For the First Circuit

No. 06-2043

HUDSON SAVINGS BANK,

Plaintiff, Appellee,

v.

GEORGE C. AUSTIN, III, ETC., ET AL.,

Defendants, Appellees,

UNITED STATES OF AMERICA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Howard, Circuit Judge,
Selya, Senior Circuit Judge,
and Shadur,[*] Senior District Judge.

    Randolph L. Hutter, Attorney, Tax Division, United States Department of Justice, with whom Eileen J. O'Connor, Assistant Attorney General, Thomas J. Clark, Attorney, Tax Division, and Michael J. Sullivan, United States Attorney, were on brief, for appellant.
    Thomas A. Barnico, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General (Commonwealth of Massachusetts), and Eileen Ryan McAuliffe, Counsel, Department of Revenue, were on brief, for state appellee.

---

[*]Of the Northern District of Illinois, sitting by designation.

March 5, 2007

**SELYA, Senior Circuit Judge.** We are asked, in effect, to referee a turf war between the Commonwealth of Massachusetts and the United States. This is the latest in a series of cases in which those two sovereigns have asserted conflicting claims against a limited fund that is to be disbursed by interpleader. In those cases, each has endeavored to have the relative priority of its claims determined in its own courts, and each has mustered a plausible argument that it should not be forced to litigate this question in the other's forum. A number of district courts have attempted to untangle this Gordian knot, but the divergence in their decisions illustrates the implacability of the constitutional quandary that has arisen. Compare, e.g., Horizon Bank & Trust Co. v. Flaherty, 309 F. Supp. 2d 178 (D. Mass. 2004), with, e.g., First Mass. Bank v. Daoust, 214 F. Supp. 2d 79 (D. Mass. 2002), and Cape Ann Sav. Bank v. Johnson, Nos. 02-10032, 02-10036, 2002 WL 1839248 (D. Mass. Aug. 12, 2002).

Before us, both sovereigns invite the announcement of a categorical rule spelling out a protocol for litigating such cases in the future. We decline the invitation to speak categorically. Rather, while leaving unresolved the most difficult aspect of the underlying constitutional question, we chart a course that suffices to dispose of the case at bar. Although we envision that this roadmap will be appropriate for other similarly configured cases,

we do not address what changes in the contours of the dispute might render this solution inutile.

With that preface, we turn to specifics. Despite the enigmatic nature of the constitutional question, the relevant facts are remarkably straightforward.

At the times material hereto, Hudson Savings Bank (the Bank) held a first mortgage on a condominium (the Property) owned by George C. Austin, Jr. Austin owed money, arising out of tax delinquencies, to both the Commonwealth of Massachusetts and the federal government. The Commonwealth recorded two tax liens against the Property in the amounts of $29,376 and $27,087, respectively. The United States filed two tax liens against the Property for $207,547 and $97,307, respectively.

In due course, Austin defaulted on the mortgage note. The Bank foreclosed and sold the Property. After satisfying its mortgage debt and defraying expenses associated with the foreclosure, it retained a surplus of nearly $100,000. The surplus was manifestly insufficient to satisfy all the tax liens and, unsure of the priorities, the Bank filed an interpleader action in a Massachusetts state court. Because Austin had died, the Bank named as defendants Austin's executor, the Massachusetts Department of Revenue, and the United States. The Bank made no claim as of right to any portion of the surplus, asking only that the court (i) resolve the relative payment priorities as among the named

-4-

defendants, (ii) discharge it from any liability with respect to the avails of the foreclosure, and (iii) award it, out of the surplus funds, the costs of bringing the action (including its attorneys' fees).

Pursuant to 28 U.S.C. § 1444, which confers upon the federal government an absolute right to remove to federal court interpleader actions in which it is named as a defendant, the United States removed the case to the United States District Court for the District of Massachusetts. The executor of Austin's estate neither contested the removal nor filed a claim to the surplus. The Commonwealth, however, invoked the Eleventh Amendment and asserted that it was immune from the Bank's action if that action was to be prosecuted in a federal court. The Commonwealth further argued that it was both a necessary and an indispensable party to the interpleader action, see Fed. R. Civ. P. 19(b), and that, therefore, its Eleventh Amendment immunity required dismissal of the entire action.

The United States rejoined on several fronts. To begin, it offered two alternate theories as to why the Eleventh Amendment did not apply. For one thing, it characterized interpleader as an in rem or quasi in rem proceeding and, thus, outside the ambit of the Eleventh Amendment under the reasoning of Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004), and California v. Deep Sea Research, Inc., 523 U.S. 491 (1998). For another thing,

party in a federal court against an unconsenting state. See Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).

The United States, however, is not a private party. Thus, the prohibition contained in the Eleventh Amendment does not extend to suits brought against a state by the federal government. See Employees of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 286 (1973). Moreover, Congress has conferred upon the federal sovereign a virtually absolute right to litigate claims brought either by or against it in the federal, rather than the state, courts. See, e.g., Bank of New Engl. Old Colony v. Clark, 986 F.2d 600, 602 (1st Cir. 1993) (noting that "Congress would not have denied the federal government access to federal courts without a clear statement to that effect"); Hood v. United States, 256 F.2d 522, 525 (9th Cir. 1958) ("The cardinal concern of the United States is that all cases in which the interests of the government are involved may be tried in federal fora.").

In light of this background, it is readily evident that tensions may arise between the sovereign interests of the state and federal governments. Those tensions make cases such as this one problematic. See, e.g., Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 50 (1st Cir. 2004). When, as a result of those tensions, an intractable constitutional question looms, courts ought to approach that question with great reticence. The lack of any

obvious answer to such a question suggests that, if a particular case can be disposed of on some narrower, less contentious ground, a court should avoid making a constitutional judgment. See Ashwander v. TVA, 297 U.S. 288, 346-48 (1936) (Brandeis, J., concurring) (introducing the concept of constitutional avoidance); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir. 1992) ("Uncertain questions of constitutional law should be addressed only when absolutely necessary."); see generally United States v. Gertner, 65 F.3d 963, 973 (1st Cir. 1995) ("The judicial task, properly understood, should concentrate on those questions that must be decided in order to resolve a specific case.").

This is such a case. The question of whether the Commonwealth invariably is entitled to Eleventh Amendment immunity from interpleader suits brought by private parties is highly ramified, the arguments advanced by the United States concerning both the nature of interpleader and its role in bringing the case to federal court are sophisticated, and the ultimate answer to the Eleventh Amendment question is freighted with uncertainty. Equally as important, the facts of this case permit us to accept and act upon Justice Brandeis's sage counsel, resolving the main controversy while reserving the most difficult aspect of the constitutional question.

The logical starting point for further analysis is a recognition of the idiosyncratic nature of Eleventh Amendment

immunity. The Supreme Court has cautioned that, when Eleventh Amendment concerns are at stake, form should not be exalted over substance. See Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 270 (1997) ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings."). For that reason, a court's appraisal of a claim of Eleventh Amendment immunity must focus on the "practical effect" of the suit as opposed to its abstract posture. Hood, 541 U.S. at 454; see In re New York, 256 U.S. 490, 500 (1921) (explaining that courts ought to look beyond the "mere names of the titular parties" to "the essential nature and effect of the proceeding").

This focus is particularly valuable here. In interpleader, the plaintiff ordinarily is a mere stakeholder who solicits the assistance of a court in order to avoid potentially inconsistent liabilities. See 4 James Wm. Moore et al., Moore's Federal Practice § 22.02[1] (3d ed. 2006). The stakeholder-plaintiff names as defendants those who are potential claimants to the stake. See id. Typically, the defendants are not antagonistic to the plaintiff but, rather, are pitted against one another. That circumstance follows ineluctably from the principle that interpleader is not available unless the defendants' claims are "adverse" to each other. 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1705 (3d ed. 2001).

It follows that, in an interpleader action in which the stakeholder does not assert a claim to the stake, the stakeholder should be dismissed immediately following its deposit of the stake into the registry of the court. See, e.g., Comm'l Union Ins. Co. v. United States, 999 F.2d 581, 583 (D.C. Cir. 1993). That dismissal should take place without awaiting an adjudication of the defendants' competing claims. See 4 Moore et al., supra § 22.03[2][a].

The case at bar is a classic interpleader action. For our purposes, three features are especially important: (i) the Bank, a pure stakeholder, has not asserted any entitlement to the stake and is seeking nothing beyond a discharge from further liability; (ii) no private party has asserted any claim of entitlement to the stake (the only non-governmental defendant — the executor of Austin's estate — has manifested total indifference to the outcome of the interpleader action); and (iii) the sum of the sovereigns' claims exceeds the dollar value of the stake.[1] A straightforward dispute between two sovereigns unquestionably would fall outside the purview of the Eleventh Amendment, and given these three features this case appears much the same, in practical effect, as a straightforward dispute between the Commonwealth and the United States.

---

[1] We emphasize that if any of these three features were not present (if, say, the stakeholder or some other private party was asserting a claim to the stake), that would present a different set of considerations. Our opinion is limited accordingly.

-10-

Of course, there is a rub: the Bank's continuing presence in the interpleader action. Stripped of rhetorical flourishes, the Bank's presence furnishes the sole basis for the Commonwealth's invocation of the Eleventh Amendment. Yet, the fact that the Bank remains in the litigation is serendipitous; the thirty-day window for removal, see 28 U.S.C. § 1446, did not permit the action to mature in state court to the point at which the stakeholder normally would have been dismissed. That being so, it is hard to see the continuing involvement of the Bank as anything more than a fiction of "the elementary mechanics of captions and pleadings" — a fiction of the type that the Supreme Court has suggested we ignore for Eleventh Amendment purposes. Coeur d'Alene Tribe, 521 U.S. at 270.

To cinch matters, giving weight to a pragmatic appraisal of the case is consistent with our existing interpleader jurisprudence. We previously have treated an interpleader action as a de facto suit between the claimants to the stake (even though, nominally, they were the defendants in the action). See United States v. Palmer, 956 F.2d 3, 7 (1st Cir. 1992) (noting that the claimants "were at once plaintiffs and defendants, [each] seeking a share of the fee disputed by the other"). Similarly, we have refused to subordinate substance to form by engaging in an "elaborate game of ring-around-the-rosy" when resolving an interpleader action. Equitable Life Assur. Soc'y v. Porter-Englehart, 867 F.2d 79, 84 n.3 (1st Cir. 1989). At bottom,

-11-

interpleader is an equitable mechanism, and courts should not hesitate to "eliminat[e] those technical restraints on the device that are not founded on adequate policy considerations." 7 Wright, Miller & Kane, supra § 1704, at 541.

Turning a blind eye to the practical effect, the Commonwealth resists any characterization of this case as a contest between sovereigns. Its argument is built around the Bank's role in bringing the interpleader action and its effort to obtain substantive relief — relief that, if ordered by a federal court, would impinge on state sovereignty. In this regard, the Commonwealth points to the Bank's prayer that the defendants (including the Commonwealth) be "restrained from instituting any action against [it] for recovery of the net proceeds of the foreclosure sale."[2] The Commonwealth's reliance on this boilerplate language seems overblown: at most, this relief is tangential to the goal of the action, which is to settle the validity and relative priority of the various tax liens.[3]

---

[2] The Commonwealth at no point contends that the Bank's standard request for reimbursement of the costs of bringing the interpleader action (including attorneys' fees), out of the funds deposited, gives rise to a claim of Eleventh Amendment immunity. Any such claim is, therefore, deemed to be abandoned. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[3] Indeed, the Bank's complaint in interpleader specifically prayed that the defendants "be required to interplead and settle between themselves their right to the net proceeds of the foreclosure sale."

-12-

We need not resolve the difficult constitutional question that attends the Commonwealth's attempt to hinge a claim of Eleventh Amendment immunity on this prayer for relief. The district court had the authority to avoid this question by the simple expedient of staying the Bank's request for relief vis-à-vis the Commonwealth and, following its adjudication of the main dispute between the two sovereigns, remanding what was left of the interpleader action to the state court for resolution. That court, unencumbered by the Eleventh Amendment, could then determine whether to grant the Bank's prayer for exculpation from any further claims that might be pressed against it by the Commonwealth with respect to the foreclosure proceeds.[4] In our view, the district court's failure to follow that course and its choice, instead, to dismiss the interpleader action constituted reversible error.

We add, moreover, that the decision to dismiss was not only unnecessary (given the available alternative) but also beyond the district court's lawful authority. After all, the pertinent provision of the remand statute, 28 U.S.C. § 1447(c), instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. This command is obligatory and does not afford

---

[4] It is entirely possible, of course, that such a remand would prove unnecessary, for the Commonwealth might at that point be willing to release the Bank from any further claims.

-13-

district courts leeway to dismiss rather than remand.[5] See <u>Mills</u> v. <u>Harmon Law Offices</u>, 344 F.3d 42, 45 (1st Cir. 2003).

The command embodied in section 1447(c) applies in circumstances in which a federal court, by virtue of the Eleventh Amendment, finds itself unable to adjudicate all or part of a removed case. While the Supreme Court has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction, see <u>Wis. Dep't of Corr.</u> v. <u>Schacht</u>, 524 U.S. 381, 391 (1998), there is ample authority for the proposition that an Eleventh Amendment bar to the maintenance of an action or a claim is precisely the type of shortfall that requires remanding a removed case to the state court. See <u>Fent</u> v. <u>Okla. Water Res. Bd.</u>, 235 F.3d 553, 559 (10th Cir. 2000); <u>Roach</u> v. <u>W. Va. Reg'l Jail & Corr. Facility Auth.</u>, 74 F.3d 46, 49 (4th Cir. 1996); <u>Smith</u> v. <u>Wis. Dep't of Agric., Trade & Consumer Prot.</u>, 23 F.3d 1134, 1140 (7th Cir. 1994); <u>Henry</u> v. <u>Metro. Sewer Dist.</u>, 922 F.2d 332, 338 (6th Cir. 1990). Construing the remand statute in this way makes eminently good sense; in such circumstances, outright dismissal would unfairly penalize a plaintiff who brings a viable cause of action in a proper

---

[5] We note that the probable exercise by the United States of its own sovereign immunity following a remand does not alter this calculus. In the final analysis, remand is mandatory unless the federal court can "say with absolute certainty that remand would prove futile." <u>Me. Ass'n of Interdep. Neighborhoods</u> v. <u>Comm'r, Me. Dep't of Human Servs.</u>, 876 F.2d 1051, 1054 (1st Cir. 1989).

-14-

forum, only to have it hijacked by powers beyond his or her control. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351-52 (1988).

This conclusion is not at odds with our holding in Parella v. R.I. Employees' Ret. Sys., 173 F.3d 46 (1st Cir. 1999). There, we ruled that the ban on hypothetical jurisdiction does not always require that Eleventh Amendment immunity questions be answered prior to the adjudication of merits questions. See id. at 55. Our holding today, which recognizes that Eleventh Amendment immunity has some attributes of subject matter jurisdiction but not others, is consistent with that stance. Cf. Maysonet-Robles v. Cabrero, 323 F.3d 43, 50 n.5 (1st Cir. 2003) (explaining that "the hybrid nature" of the immunity renders it "sui generis").

Let us be perfectly clear. In concluding that remand, rather than dismissal, is the appropriate way to assuage the lingering Eleventh Amendment concerns raised by this case, we do not pretend to have crafted a perfect solution. Conducting a single lawsuit in two complementary court systems is inefficient and burdensome. Yet, given the uncertain constitutional terrain, the half-measure of interpleader in a federal court followed by possible remand to a state court seems preferable to any of the alternatives. Here, as elsewhere in the real world, half a loaf often is better than none.

At this juncture, a succinct summary seems sensible. We hold that, on the facts of this case, the Eleventh Amendment will

-15-

not be offended by allowing a federal court to determine the relative priority of the federal and state tax liens. Only the particular claim giving rise to potential Eleventh Amendment concerns — the Bank's claim for relief that would bind the Commonwealth — need be reserved.

This disposition renders moot the Rule 19(b) issue raised by the Commonwealth and resolved by the district court. Because we give "practical effect" to the Eleventh Amendment claim, Hood, 541 U.S. at 454, and visualize this interpleader action primarily as a suit between the Commonwealth and the United States, it becomes academic whether the Commonwealth, if wholly immune from any further proceedings in the federal court, would be an indispensable party.

We need go no further. For the reasons elucidated above, we reverse the judgment of dismissal and return the matter to the district court for further proceedings consistent with this opinion. Thereafter, if any issue remains to be resolved between the Commonwealth and the Bank, see supra note 4, the remainder of the case should be remanded to the state court.

**Reversed and remanded**.